1

2

3

4

5

6

7

8

9                    UNITED STATES DISTRICT COURT

10                  SOUTHERN DISTRICT OF CALIFORNIA

11

EUGENE RAYFORD,                      )    Civil No. 07cv1684-W (AJB)
                                     )
12                                   )
                       Plaintiff,    )    **REPORT AND RECOMMENDATION**
13   v.                              )    **GRANTING IN PART AND DENYING**
                                     )    **IN PART DEFENDANTS' MOTION TO**
14   G. J. GIURBINO, Warden; et. al, )    **DISMISS**
                                     )
15                     Defendants.   )    [Doc. No. 30.]
                                     )
16

17          Plaintiff, Eugene Rayford, a state prisoner proceeding *pro se* and *in forma pauperis*, filed a First

18   Amended Complaint pursuant to 42 U.S.C. § 1983.  Defendants Khatri, Esperanza, Houston and

19   Valenzuela[1] filed a motion to dismiss Plaintiff's First Amended Complaint for failure to exhaust

20   administrative remedies and pursuant to Federal Rule of Civil Procedure 12(b)(6).  Plaintiff filed an

21   opposition to Defendants' motion on September 12, 2008.  Defendants filed a reply on September 30,

22   2008.  After a thorough review of Defendants' motion, Plaintiff's opposition, Defendants' reply, all

23   supporting documents, and the applicable law, this Court **RECOMMENDS** that Defendants' motion to

24   dismiss be **GRANTED in part and DENIED in part**.

25   / / / /

26   / / / /

27   _____

28       [1]The First Amended Complaint presents claims against Warden Giurbino, and Officers Martinez,
Stokes and Stiens; however, they have not yet been served with the complaint and are not subject to the
motion to dismiss.

                                          1                            07cv1684 W (AJB)

1

**BACKGROUND**

2    Plaintiff complains that on October 11, 2004, he submitted a sick call slip to CDC's Health care

3 staff.  (First Am. Compl. ¶ 1 of Factual Allegations.)  He complained of chest and throat pains, a

4 burning pain caused by a rash on his right ankle and pain on his left testicle.  (Id.)  Since he did not

5 receive a response to the sick call slip, on October 28, 2004, he filed a CDC Inmate Grievance Appeal

6 (602 Form) that he failed to receive treatment and the pain in his throat was getting worse.  (Id. ¶ 2.)

7 On November 3, 2003, Plaintiff alleges that he received a 602 informal response stating that his 602 was

8 being forwarded to A-yard medical for an informal response.  (Id. ¶ 3.)  Not having heard a response, on

9 November 16, 2004, Plaintiff forwarded a CDC 6A-22 and attached his 602 route slip receipt to the A

10 yard medical but it went unanswered.  (Id. ¶ 4.)  On November 8, 2004, Plaintiff yelled at the MTA and

11 questioned why he was not receiving medical attention.  (Id. ¶ 5.)  The MTA told him that the sick call

12 slips were probably canceled again.  (Id.)  The MTA stated that the doctors are indolent and do not

13 respond to the sick call slips.  (Id.)  As a result, the sick call slips pile up and delay treatment for ad-seg

14 inmates.  (Id.)

15    In early November 2004, Plaintiff claims that his throat pain worsened which required him to go

16 on a semi-liquid diet by trading his breakfast and dinner for milk and soft foods.  (Id. ¶ 6.)  His throat

17 pain was so severe that he thought he had some kind of throat cancer.  (Id.)  Plaintiff contends that he

18 filed numerous sick call slips complaining of being in serious pain.  (Id. ¶ 8.)

19    On November 18, 2004, Plaintiff took his complaints to Sergeant Martinez.  (Id. ¶ 11.)  Martinez

20 telephoned A-yard medical but nobody answered.  (Id.)  Martinez said that Associate Warden Houston

21 would be arriving soon and that he should place his complaints with her.  (Id.)  On the same day,

22 Plaintiff yelled out to Defendant Associate Warden Houston about his complaints of severe throat pain

23 and that his medical request slips and 602s were going unanswered.  (Id. ¶ 13.)  Defendant Houston said

24 "I'll see what I can do when I walk by the medical clinic."  (Id.)  Plaintiff claims that Defendant

25 Houston failed to respond by ordering one of her subordinates to escort Plaintiff to the medical clinic

26 and he was left to endure another 30 days of severe pain.  (Id. ¶ 14.)  Shortly after speaking with

27 Defendant Houston, Plaintiff called Defendant Stokes over to address his medical complaints.  (Id. ¶

28 17.)  Defendants Stokes and Valenzuela approached Plaintiff.  (Id.)  Stokes commented that he saw

2

1   Plaintiff talking to Houston and that she would handle it.  (Id.)  Valenzuela stated that they would talk to

2   the nurse for Plaintiff when they passed the medical clinic.  (Id.)

3          On November 19, 2004, an A-facility MTA informed Plaintiff that the A-facility doctors

4   canceled all A-facility ad-seg medical slips and gave him another sick call slip and told Plaintiff to try

5   again.  (Id. ¶ 9.)  He filled out another sick call slip and resubmitted it to the MTA's office.  (Id. ¶ 10)

6          Plaintiff further alleges that Defendants Dr. Khatri and Dr. Esperanza were the medical

7   physicians assigned to the ad-seg A-yard facility medical clinic between October 11 - February 30,

8   2005. (Id. ¶ 20.)  Defendants Khatri and Esperanza canceled ad-seg medical slips allowing them to pile

9   up causing a two month delay which denied Plaintiff medical attention and caused Plaintiff's condition

10  to worsen.  (Id. ¶ 21.)  Plaintiff claims he filed four serious medical slips and a 602 for his medical

11  condition that went unanswered.  (Id. ¶ 22, 23.)  Consequently, his throat condition worsened and he

12  endured an additional two months of severe pain before he was treated.  (Id.)  He filed another 602 dated

13  December 7, 2004 which was addressed by the CDC.  (Id. ¶ 23.)  On December 19, 2004, Plaintiff was

14  diagnosed with laryngitis, allergies and a marble size assis (sic) on his left testicle.  (Id. ¶ 99.)  He was

15  prescribed medication.[2]  (Id. ¶ 100.)

16         On January 4, 2005, Defendants responded to an "old" November medical slip and examined

17  Plaintiff in "A-yards 5-building ad-seg" or a holding cell which he claims is an illegal practice in

18  California.  (Id. ¶ 24.)  Plaintiff claims that the holding cell was a small cage which was filthy contain-

19  ing inmates' hair, dust and dirt and was not sterile.  (Id.)  On February 22, 2005, he had another

20  examination in the same "filthy, bacteria, contaminated, hazarous (sic) environment" which disregarded

21  Plaintiff's health especially since he was being treated for a bacterial infection.  (Id. ¶¶ 25-26.)

22         On November 23, 2004, Plaintiff alleges that he discovered that the bottom of his mattress was

23  infested with mold.  (Id. ¶ 28.)  He complained to building staff about the mold on his mattress but they

24  denied him a new mattress and a move to another cell.  (Id.)

25         On December 11, 2004, Plaintiff complained and showed his mattress to Defendant Martinez but

26  he refused the request for a new mattress.  (Id. ¶ 37.)  On January 7, 2005, Plaintiff and another inmate,

27

28         [2]According to his opposition, Plaintiff states that he was given amoxicillin for the laryngitis, aspirin
    enteric for pain, triamcinolone for his severe rash and chlorphenamine for his allergies. (P's Opp. at 6.)

1   Edward McWilliams, who also discovered mold under his mattress, showed their mattresses to MTA

2   Frada who complained to 3rd watch officials about what she saw but the officers did nothing.  (Id. ¶ 38.)

3   On January 13, 2005, Plaintiff showed his molded mattress to psychologist Keenan and Ms. Swift who

4   both vigorously complained and argued with the officers and the floor sergeant to get Plaintiff a new

5   mattress but they were rejected.  (Id. ¶ 39.)

6        On January 19, 2005, inmate McWilliams, Keenan, and Swift told Defendants Houston, Stokes

7   and the rest of the committee about the mold on the mattresses.  (Id. ¶ 40.)  Defendant Houston ordered

8   Martinez to give Plaintiff and McWilliams new mattresses today and not tomorrow.  (Id.)  However,

9   Defendant Martinez refused to comply with Defendant Houstons' order and ordered his officers not to

10  get Plaintiff anything such as 602's and if Plaintiff submitted a 602, the staff was to rip it up.  (Id.)  On

11  January 30, 2005, Plaintiff showed MTA Banks that the officers refused to give him a new mattress

12  even when ordered by the associate warden.  (Id. ¶ 41.)  MTA Banks argued with the officers but the

13  officers lied and said they would give him one when the mattress came in.  (Id.)  On February 1, 2005,

14  Plaintiff informed Keenan and Swift about Martinez and the situation and they got into a heated

15  argument with numerous officers about the issue.  (Id. ¶ 42.)  Keenan then placed a call to Defendant

16  Associate Warden Houston and told her that Plaintiff never received the new mattress which Houston

17  ordered her subordinates to obtain.  (Id.)  Defendant Houston then ordered Sergeant to call T. Rubin to

18  get a new mattress for Plaintiff.  (Id.)  On that day, Plaintiff received the new mattress.  (Id. ¶ 43.)

19  Plaintiff claims he suffered deplorable conditions for 71 days[3] from November 23, 2004 to February 1,

20  2005 having to eat his food with mole spores in the air and that the smell of the mold caused him further

21  injuries.  (Id. ¶ 44.)

22       Based on these facts, Plaintiff alleges deliberate indifference to serious medical needs by prison

23  officials for their delay and failure to intervene in providing medical treatment for his condition and

24  being treated in a dirty holding cell instead of a medical examination room.  He also contends that he

25  was subject to inhumane living conditions by prison officials failing to replace Plaintiff's mold infested

26  mattress for 71 days.

27  _____

28       [3]Plaintiff claims that he suffered 63 days in the inhumane condition; however, according to the
    Court's calculation of the dates Plaintiff claims he was living with a mold infested mattress, 71 days had
    passed.

**DISCUSSION**

Defendants move to dismiss the First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b) and 12(b)(6).  Defendants contend that: (1) Plaintiff has failed to properly exhaust his administrative remedies; and (2) Plaintiff's First Amended Complaint fails to state a claim.

**A.      Exhaustion of Administrative Remedies**

The Prison Litigation Reform Act of 1995 ("PLRA") amended 42 U.S.C. § 1997e(a) to provide that "no action shall be brought with respect to prison conditions under § 1983, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Under the PLRA, exhaustion is no longer within the discretion of the district courts but is mandatory.  Woodford v. Ngo, 126 S. Ct. 2378, 2382 (2006).  "Prisoners must now exhaust all available remedies, not just those that meet federal standards."  Id.  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules."  Id. at 2386.  However, once no remedy remains "available," a prisoner need not further pursue the grievance.  Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005).  If an inmate's appeal is granted at a lower level, the inmate need not appeal because no remedy remains "available."  See id.; Brady v.  Attygala, 196 F. Supp. 2d 1016, 1022-23 (C.D. Cal.  2002).

A plaintiff who fails to exhaust available administrative remedies prior to filing suit is subject to dismissal on an "unenumerated Rule 12(b) motion, rather than a summary judgment motion."  Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).  Nonexhaustion under § 1997e(a) is an affirmative defense and defendants have the burden of raising and proving the absence of exhaustion.  Jones v. Bock, 127 S. Ct. 910, 919 (2007); Brown, 422 F.3d at 936 ("it is of central importance that § 1997e(a) is an affirmative defense").

An inmate is required to use the administrative process that the state provides in order to exhaust his administrative remedies.  See Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir. 2005).  The adminis-trative review process of the California Department of Corrections consists of a grievance system for prisoner complaints, in which "any inmate or parolee under the department's jurisdiction may appeal any departmental decision, action, condition or policy which they can reasonably demonstrate as having an adverse effect upon their welfare."  Cal. Code Regs. tit. 15, § 3084.1(a).  Four levels of appeal exist:

1   (1) informal resolution, (2) formal written appeal via a Form 602 grievance, (3) second level appeal to

2   the institution head, and (4) third level appeal to the Director of the California Department of Correc-

3   tions.  At each level, the inmate must submit the appeal within 15 working days of the event or decision

4   being appealed, or of receiving an unacceptable lower level appeal decision.  Id. at 3084.6(c).

5          The exhaustion requirement does not require Plaintiff to name all defendants in the grievance as

6   long as the prison's policies do not require such detail.  Jones, 127 S. Ct.  at 922. ("[E]xhaustion is not

7   per se inadequate simply because an individual later sued was not named in the grievances.").  Under

8   the California regulations, a prisoner "shall use a CDC Form 602, Inmate/Parolee Appeal Form to

9   describe the problem and action requested."  Cal. Code Regs. tit. 15, § 3084.2(a).  CDC 602 does not

10  require a prisoner to name or identify specific prison officials.  Lewis v. Mitchell, 416 F. Supp. 2d 935,

11  941-42 (S. D. Cal. 2005).

12         Further, an inmate need not present prison officials with every possible theory of recovery or

13  relevant facts in his CDC 602 appeal.  Gomez v. Winslow, 177 F. Supp. 2d 977, 983 (N.D. Cal. 2001).

14  The court explained that the prisoner need only "put [the CDC] on notice of facts it should discover

15  during its investigation of the claim."  Id.; Irvin v. Zamora, 161 F. Supp. 2d 1125, 1134-35 (S.D. Cal.

16  2001) (purposes of the exhaustion requirements are fulfilled as long as the plaintiff presents "the

17  relevant factual circumstances giving rise to a potential claim" giving the prison notice of the potential

18  claims).

19         In the First Amended Complaint, Plaintiff alleges a claim of deliberate indifference to serious

20  medical needs when Defendants Houston and Valenzuela delayed medical treatment by failing to

21  intervene on behalf of Plaintiff, when Defendants Khatri and Esperanza delayed Plaintiff's medical

22  treatment by refusing to respond to his ad-seg medical request slips for 2 months, and when Defendants

23  Khatri and Esperanza examined him in a small holding cell that was filthy and not sterile.  Plaintiff also

24  brings a claim that Defendants Houston and Valenzuela denied him humane conditions of confinement

25  in violation of his Eighth Amendment right against cruel and unusual punishment when they refused to

26  replace Plaintiff's mold infested mattress or relocate him to another cell.

27         In the First Amended Complaint, Plaintiff includes the CDC 602 Form with Log No. A-05-0184.

28  (First Am. Compl. at 45.)  That appeal was granted at the First Appeal Response Level on March 21,

1   2005.  (Id. at 56.)  At the end of section A ("Describe Problem") of the CDC 602 form, it states "If you

2   need more space, attach one additional sheet."  (Id. at 45.)  In the space provided are the words "see

3   attachment."  (Id.)  Attached to the CDC 602 form is one additional sheet with extremely small print that

4   describes in detail the facts relevant to the issues in this case and exhausts all claims.  (Id. at 47.)

5   However, in Defendants' motion to dismiss, it is interesting to note that at the end of Section A of

6   Defendants' version of the 602 Form there are no hand printed words that say "see attachment."[4]  (Ds'

7   Mot. to Dismiss, Degeus Decl, Ex. A.)  Defendants present another 602 Form, that was received by the

8   Inmate Appeals but has no log number, which has attached the one page that includes all the facts that

9   support the claims in this case.  (Id.)  Defendants' exhibits suggest that the one page of facts that detail

10  the facts in this case is not part of the 602 Form with Log No. A-05-184 but another 602 Form that

11  appears to have not been accepted for review.

12      There is a discrepancy with the CDC 602 Form of Log No. A-05-1984 that was not addressed by

13  either party.  Defendants have the burden to demonstrate that Plaintiff has not exhausted his claims.  See

14  Jones, 127 S. Ct. at 919; Brown, 422 F.3d at 936 ("it is of central importance that § 1997e(a) is an

15  affirmative defense").  Since Defendants have failed to bear its burden to show that Plaintiff has not

16  exhausted his claims, the Court RECOMMENDS that Defendants' motion to dismiss for failure to

17  exhaust administrative remedies be DENIED.

18  **B.      Failure to State a Claim Pursuant to Federal Rule of Civil Procedure 12(b)(6)**

19      A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure

20  12(b)(6) tests the legal sufficiency of the claims in the complaint.  Navarro v. Block, 250 F.3d 729, 732

21  (9th Cir. 2001).  A claim can only be dismissed if it "appears beyond doubt that the plaintiff can prove

22  no set of facts in support of his claim that would entitle him to relief."  Conley v. Gibson, 355 U.S. 41,

23  45-46 (1957); Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984).  The court must accept as true all

24  material allegations in the complaint, as well as reasonable inferences to be drawn from them, and must

25  construe the complaint in the light most favorable to the plaintiff.  N.L. Indus., Inc. v. Kaplan, 792 F.2d

26  896, 898 (9th Cir. 1986); Parks School of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995).

27

28      [4]The Court also notes that Defendants have not provided a complete of the CDC 602 Form.  Page 2 of the 602 Form is not included.

07cv1684 W (AJB)

1    Where a plaintiff appears in propria persona in a civil rights case, the court must construe the

2    pleadings liberally and afford the plaintiff any benefit of the doubt.  Karim-Panahi v. Los Angeles Police

3    Dept., 839 F.2d 621, 623 (9th Cir. 1988).  The rule of liberal construction is "particularly important in

4    civil rights cases."  Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992).  In giving liberal interpreta-

5    tion to a pro se civil rights complaint, however, the court may not "supply essential elements of the

6    claim that were not initially pled."  Ivey v. Bd. of Regents of the Univ. of Alaska, 673 F.2d 266, 268

7    (9th Cir. 1982). "Vague and conclusory allegations of official participation in civil rights violations are

8    not sufficient to withstand a motion to dismiss."  Id.

9         **1.    Eleventh Amendment Immunity**

10        Defendants seek dismissal of Plaintiff's damages claims to the extent they are based on acts

11   taken in their official capacities.  Plaintiff states that he is suing Defendants in both their official and

12   individual capacities for monetary damages.  (First Am. Compl. ¶¶ 5-15 of Factual Allegations.)

13        While the Eleventh Amendment bars a prisoner's section 1983 claims against state actors sued in

14   their official capacities, Will v. Michigan, 491 U.S. 58, 66 (1989), it does not bar damage actions against

15   state officials in their personal or individual capacities.  Hafer v. Melo, 502 U.S. 21, 31 (1991); Pena v.

16   Gardner, 976 F.2d 469, 472-73 (9th Cir. 1992).  When a state actor is alleged to have violated both

17   federal and state law and is sued for damages under section 1983 in his individual or personal capacity,

18   there is no Eleventh Amendment bar, even if state law provides for indemnification.  Ashker v.

19   California Dep't of Corrections, 112 F.3d 392, 395 (9th Cir. 1997).  The Eleventh Amendment prohibits

20   actions for damages against an "official's office," that is, actions that are in reality suits against the state

21   itself.  Stivers v. Pierce, 71 F.3d 732, 749 (9th Cir. 1995).

22        In the First Amended Complaint, Plaintiff is suing Defendants in both their official and

23   individual capacities for money damages.  The Court RECOMMENDS that Defendants' motion to

24   dismiss on Eleventh Amendment grounds be GRANTED to the extent that Plaintiff seeks damages

25   against Defendants in their official capacity and that such claims be DISMISSED with prejudice.

26   However, the Eleventh Amendment imposes no bar to Plaintiff's damages action against Defendants in

27   their personal capacities.  The Court will now consider Defendants' motion to dismiss on those claims.

28   / / / /

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**2.       Section 1983 Claims**

**a.       Eighth Amendment Claim for Deliberate Indifference
to Serious Medical Needs**

Plaintiff alleges that Defendants Houston and Valenzuela delayed medical treatment by failing to intervene on behalf of Plaintiff.  He also claims that Defendants Khatri and Esperanza delayed his medical treatment by failing to respond to his medical request slips in a timely manner and that they examined him in a dirty holding cell rather than a sterile medical examination room which disregarded his health especially since he would later be treated for a bacterial infection.

"Deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 104 (1976) (citation omitted).  This principle "establish[es] the government's obligation to provide medical care for those whom it is punishing by incarceration." Id. at 103.  The Supreme Court has noted that "[a]n inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." Id.; see also West v. Atkins, 487 U.S. 42, 54-55 (1988).

Thus, to establish a violation of the Eighth Amendment, Plaintiff must plead sufficient acts or omissions to show that defendants were deliberately indifferent to his serious medical needs. See Estelle, 429 U.S. at 106; Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989).  Deliberate indifference to serious medical needs occurs when prison officials "deny, delay, or intentionally interfere with medical treatment." Hunt, 865 F.2d at 201 (quoting Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1984)).  A section 1983 plaintiff must allege facts that show the seriousness of his medical need as well as "the nature of the defendant's response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992) overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).  The indifference to medical needs must be substantial; inadequate treatment due to malpractice, or even negligence, does not amount to a constitutional violation. Estelle, 429 U.S. at 106; McGuckin, 974 F.2d at 1059.  Further, a mere difference of opinion over proper medical treatment does not constitute deliberate indifference. Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).  Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" Farmer v. Brennan, 511 U.S. 825, 835 (1994) (quoting Whitley v. Albers, 475 312, 319 (1986)).

1      A mere delay in treatment does not constitute a violation of the Eighth Amendment unless the

2  delay was harmful.  See McGuckin, 974 F.2d at 1059; Shapley v.  Nevada Bd. of State Prison Comm'rs,

3  766 F.2d 404, 407 (9th Cir. 1985); Hunt, 865 F.2d at 200 ("[D]elay in providing a prisoner with dental

4  treatment, standing alone, does not constitute an Eighth Amendment violation."); Broughton v.  Cutter

5  Labs., 622 F.2d 458, 460 (9th Cir. 1980) (delay of six days in treating hepatitis may constitute deliberate

6  indifference).  A defendant must purposeful ignore or fail to respond to an inmate's pain or possible

7  medical need in order to establish deliberate indifference.  McGuckin, 974 F.2d at 1060.

8      A medical need is serious "'if the failure to treat the prisoner's condition could result in further

9  significant injury or the unnecessary and wanton infliction of pain.'"  McGuckin, 974 F.2d at 1059

10  (quoting Estelle, 429 U.S. at 104.)  Indications of a serious medical need include "the presence of a

11  medical condition that significantly affects an individual's daily activities."  Id. at 1059-60.

12                          **i.      Defendants Houston and Valenzuela**

13      Plaintiff brings a claim against Defendants Houston and Valenzuela for deliberate indifference to

14  serious medical needs in violation of the Eighth Amendment for delaying his medical treatment by

15  failing to intervene on behalf of Plaintiff to receive prompt medical treatment by a doctor for his serious

16  medical condition.  (First Am. Compl. at ¶ 80 of Factual Allegations.)

17      On November 18, 2004, Plaintiff claims that he yelled out of his cell door to Defendant

18  Associate Warden Houston and complained that he was having severe throat pains that may be

19  cancerous and that his medical request slips were not being answered by A-yard doctors.  (Id.  ¶ 13.)

20  Houston responded with "I'll see what I can do when I walk by the medical clinic."  (Id.)  After her

21  comments, he was not seen by a doctor for another 30 days.  (Id. at ¶ 14.)  He argues that Houston knew

22  about the alleged constitutional violation and failed to act to prevent it.  (Id. ¶ 15.)

23      To state a claim against a state official under section 1983, the complainant must allege direct

24  personal participation by the defendant.  Taylor v.  List, 880 F.2d 1040, 1045 (9th Cir. 1989).  "A

25  supervisor is only liable for the constitutional violations of his subordinates if the supervisor participated

26  in or directed the violations, or knew of the violations and failed to act to prevent them." Id.  If there is

27  no affirmative link between a defendant's conduct and the alleged injury, there is no deprivation of the

28  plaintiff's constitutional rights.  Rizzo v. Goode, 423 U.S. 362, 370 (1976).

07cv1684 W (AJB)

1    Plaintiff has sufficiently alleged personal participation by Defendant Houston.  He claims that

2    she knew of the violation because he personally told her about it and that she failed to act because he

3    endured another month of severe pain.  (First Am. Compl. ¶¶ 13, 14 of Factual Allegations.)  Plaintiff

4    has also stated a claim against Defendant Houston.  First, Plaintiff has sufficiently alleged that he has a

5    serious medical condition.  He claims he had a severe pain in his throat for over two months which

6    forced him to go on a semi-liquid diet.  (Id. 6 ¶ .)  He also had a burning pain caused by a rash on his

7    right ankle and pain on his left testicle.  (Id. ¶ 1.)  When he was examined, he was diagnosed with

8    laryngitis, allergies and a marble size assis (sic) on his left testicle and was prescribed medication.  (Id.

9    ¶¶ 99, 100.)  It appears the combination of his condition, if untreated, could result in further significant

10   injury or the unnecessary infliction of pain and constitutes a serious medical condition.  See McGuckin,

11   974 F.2d at 1059.  Plaintiff also alleges that Defendant purposely failed to act to obtain care for his

12   serious medical needs.  See id. at 1060.  He claims that she delayed his medical treatment by failing to

13   intervene on behalf of Plaintiff to receive prompt medical treatment.  Defendant Houston stated that she

14   would see what she could do when she walked by the medical clinic but he was not treated for another

15   thirty days.  Therefore, the Court concludes that Plaintiff has sufficiently alleged a claim of deliberate

16   indifference to serious medical needs as to Defendant Houston.

17   As to Defendant Valenzuela, Plaintiff claims he called Defendant Stokes over to discuss his

18   medical needs.  As Stokes approached, Defendant Valenzuela accompanied her.  (First Am. Compl. ¶ 17

19   of Factual Allegations.)  Valenzuela stated "when we pass the medical clinic, we'll talk to the nurse for

20   you."  (Id.)  Plaintiff alleges Defendant Valenzuela knew about his serious medical condition and failed

21   to take Plaintiff to the medical clinic which caused Plaintiff to endure another month in severe pain.  (Id.

22   ¶ 18.)  The Court concludes that Plaintiff has sufficiently alleged a claim of deliberate indifference to

23   serious medical needs as to Defendant Valenzuela.  The Court RECOMMENDS that the motion to

24   dismiss as to Defendants Houston and Valenzuela be DENIED.

25                    **ii.    Drs.  Khatri and Esperanza**

26   Plaintiff asserts that Drs. Khatri and Esperanza delayed Plaintiff's medical treatment by failing to

27   respond to ad-seg medical request slips which caused a two month delay.  Although Plaintiff has

28   sufficiently alleged a serious medical need, he has failed to allege specific facts indicating that

11

1  Defendants Khatri and Esperanza acted with the requisite subjective intent to disregard a serious need

2  for medical care.  Accordingly, the Court concludes that Plaintiff has failed to allege sufficient facts to

3  assert a claim of deliberate indifference to serious medical needs as to Defendants Drs. Khatri and

4  Esperanza.

5       Plaintiff also claims that Defendants exposed him to hair, dust and dirt when he was treated in a

6  holding cell instead of a medical examination room and exposure to hair, dust and dirt disregarded his

7  serious medical need.  Plaintiff has failed to show that the Defendants denied, delayed or intentionally

8  interfered with his medical treatment.  At most, Plaintiff has alleged lack of due care for Plaintiff's

9  interests.  See Farmer, 511 U.S. at 835.  Lack of due care is insufficient to state a claim of deliberate

10  indifference to serious medical needs.  See id.  Accordingly, the Court RECOMMENDS that the motion

11  to dismiss as to Defendants Khatri and Esperanza be GRANTED.

12              **b.       Eighth Amendment Claim for Conditions of Confinement**

13       Plaintiff argues that Defendants Houston and Valenzuela denied him humane conditions of

14  confinement in violation of his Eighth Amendment right against cruel and unusual punishment when

15  they refused to replace Plaintiff's mold infested mattress or relocate him to another cell.

16       The Eighth Amendment's prohibition against cruel and unusual punishment imposes upon prison

17  officials the duty to provide prisoners "humane conditions of confinement." Farmer, 511 U.S. at 832.

18  Prison conditions do not violate the Eighth Amendment unless they amount to "unquestioned and

19  serious deprivations of basic human needs" or of the "minimal civilized measure of life's necessities."

20  Rhodes v. Chapman, 452 U.S. 337, 347 (1981); Wilson v. Seiter, 501 U.S. 294, 308 (1991).

21       To assert an Eighth Amendment claim for deprivation of humane conditions of confinement, a

22  prisoner must allege facts that satisfy a test involving both an objective and subjective component.

23  Farmer, 511 U.S. at 834; Allen v. Sakai, 48 F.3d 1082, 1087 (9th Cir. 1994).  Under the objective

24  requirement, the prisoner must allege facts sufficient to show that the prison official's acts or omissions

25  deprived him of the "minimal civilized measure of life's necessities." Rhodes, 452 U.S. at 347; Farmer,

26  511 U.S. at 834.  This objective component is satisfied so long as the institution "furnishes sentenced

27  prisoners with adequate food, clothing, shelter, sanitation, medical care, and personal safety." Hoptowit

28  v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982); see also Farmer, 511 U.S. at 832; Wright v. Rushen, 642

1   F.2d 1129, 1132-33 (9th Cir. 1981).  Under the subjective requirement, the prisoner must allege facts

2   that show that the defendant acted with "deliberate indifference."  <u>Wilson</u>, 501 U.S. at 303; <u>see also</u>

3   <u>Allen</u>, 48 F.3d at 1087.  A defendant cannot be held liable under an Eighth Amendment claim of

4   inhumane conditions of confinement unless the standard for criminal recklessness is met, i.e., the

5   official knows of and disregards an excessive risk to inmate health or safety.  <u>Farmer</u>, 511 U.S. at 837.

6   "Deliberate indifference" exists when a prison official "knows of and disregards an excessive risk to

7   inmate health and safety; the official must be both aware of facts from which the inference could be

8   drawn that a substantial risk of serious harm exists, and he must also draw the inference."  <u>Id.</u>; <u>see also</u>

9   <u>Wilson</u>, 501 U.S. at 302-03.

10        Inadequate ventilation undermining the health of inmates and exposure to unhealthy airborne

11   microorganisms can violate the Eighth Amendment in some circumstances.  <u>See</u> <u>Keenan v. Hall</u>, 83 F.3d

12   1083, 1090 (9th Cir. 1996) ("air . . . saturated with the fumes of feces, urine, and vomit" could violate

13   the Eighth Amendment); <u>Hoptowit v. Spellman</u>, 753 F.2d 779, 784 (9th Cir. 1985) (inadequate lighting,

14   vermin infestation, substandard fire prevention and safety hazard violated minimum requirements of the

15   Eighth Amendment); <u>Ramos v. Lamm</u>, 639 F.2d 559, 569 (10th Cir. 1980) (stating that inadequate

16   ventilation resulting in excessive odors, heat and humidity that creates stagnant air as well as excessive

17   mold and fungus growth which facilitates personal discomfort along with health and sanitation

18   problems); <u>Townsend v. Fuchs</u>, 522 F.3d 765, 774 (7th Cir. 2008); (sleeping on moldy and wet mattress

19   could be sufficiently serious to violate the Eighth Amendment).

20        Plaintiff has sufficiently alleged supervisory liability as to Defendant Houston when she failed to

21   give him a new mattress or a move to another cell when Plaintiff discovered his mattress was infested

22   with mold.  On January 19, 2005, Plaintiff told Defendant Houston about the mold on his mattress and

23   that officers were denying him a new mattress.  (First Am. Compl. ¶ 40 of Factual Allegations.)  He

24   claims that Defendant Houston ordered Officer Martinez to give him a new mattress "today and not

25   tomorrow."  (<u>Id.</u>)  Despite her orders, the officers refused to comply with  Defendant Houston's order.

26   (<u>Id.</u>)  Later, Defendant Houston ordered Sergeant Stiens to call T. Rubin to get a new mattress for

27   Plaintiff.  (<u>Id.</u> ¶ 42.)   Plaintiff has alleged that Defendant Houston was aware of Plaintiff's condition

28   and was personally involved in trying to get him a new mattress.

1    On November 23, 2004, Plaintiff discovered mold on the bottom of his mattress.  (Id. ¶ 28.)  He

2    did not receive a new mattress until February 1, 2005 and claims he suffered for 71 days living with the

3    mold on his mattress.  (Id. ¶¶ 43, 114.)  He claims he was unable to leave his cell, ate his food with mold

4    spores in the air and suffered with the smell of mold in the air.  (Id. ¶¶ 44, 117.)  He asserts that he

5    suffered allergies from the mold.  (Id. ¶ 119.)

6    Plaintiff has made adequate allegations of the objective component of deprivation of humane

7    conditions of confinement showing that the condition deprived him of the "minimal civilized measure of

8    life's necessities."  See Rhodes, 452 U.S. at 347; see also Townsend, 522 F.3d at 774.  However,

9    Plaintiff has not sufficiently alleged that Defendant Houston acted with deliberate indifference.  In the

10    First Amended Complaint, Plaintiff claims that Houston attempted to address Plaintiff's immediate

11    needs by ordering her staff to replace his mattress on two occasions.  His allegations demonstrate that

12    Defendant Houston was not acting with criminal recklessness or ignoring an excessive risk to Plaintiff's

13    health or safety.  See Farmer, 511 U.S. at 837.  Based on the facts in the First Amended Complaint,

14    Plaintiff has failed to sufficiently allege a claim for inhumane conditions of confinement under the

15    Eighth Amendment against Defendant Houston.  Accordingly, the Court RECOMMENDS that the

16    motion to dismiss be GRANTED as to Defendant Houston.

17    As to Defendant Valenzuela, Plaintiff has failed to allege any facts regarding the mold on the

18    mattress issue against him.  The only reference to Defendant Valenzuela and the mattress is at the end of

19    the First Amended Complaint.  In the "Claim for Relief", Plaintiff summarily states that "defendants

20    J.C. Martinez R.M. Houston; J. Stokes, S. Valenzuela and Pike Stiens was all told by the Plaintiff of the

21    molded mattress . . . ."  (First Am. Compl. ¶ 109 of Factual Allegations.)  Such conclusory allegations

22    are not sufficient to withstand a motion to dismiss.  See Ivey, 673 F.2d at 268.  Accordingly, the Court

23    RECOMMENDS that the motion to dismiss be GRANTED as to Defendant Valenzuela.

24    **C.      Qualified Immunity**

25    Alternatively, Defendants argue that they are immune from suit based on qualified immunity.

26    "Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally

27    deficient, reasonably misapprehends the law governing the circumstances she confronted."  Brosseau v.

28    Haugen, 125 S. Ct 596, 599 (2004).  Qualified immunity entitles government officials to "an immunity

1   from suit rather then a mere defense to liability; and like an absolute immunity, it is effectively lost if a

2   case is erroneously permitted to go to trial." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).

3           Under Saucier v. Katz, the threshold question is: "[t]aken in the light most favorable to the party

4   asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"

5   Saucier v. Katz, 533 U.S. 194, 201 (2001).  If a violation of a constitutional right is established, the next

6   question is "whether the right was clearly established." Saucier, 533 U.S. at 201.  That is "whether it

7   would be clear to a reasonable officer that his conduct was lawful in the situation he confronted." Id. at

8   202.

9           Typically, a qualified immunity defense is generally not amenable to a rule 12(b)(6) motion. See

10  Morley v.  Walker, 175 F.3d 756, 761 (9th Cir.  1999).  The Court is usually "not equipped at this stage

11  to determine whether qualified immunity will ultimately protect [the defendant].  Those issues must be

12  resolved at summary judgment or at trial." Id.; see also Groten v.  California, 251 F.3d 844, 851 (9th

13  Cir. 2001) ("Rule 12(b)(6) dismissal is not appropriate unless [the court] can determine, based on the

14  complaint itself, that qualified immunity applies.").  Here, Defendants argue that they are entitled to

15  qualified immunity.  Plaintiff argues the contrary.

16          Here, Plaintiff alleges a violation of the Eighth Amendment claim against deliberate indifference

17  to serious medical need against Defendants Houston and Valenzuela.  Based on the facts of the First

18  Amended Complaint, the Court cannot determine whether the Defendants violated a constitutional right

19  and whether the right was clearly established.  Therefore, the Court cannot make a determination

20  whether Defendants are immune based on qualified immunity.  Accordingly, at this time, the Court

21  RECOMMENDS that Defendants' motion to dismiss based on qualified immunity be DENIED.

**Conclusion**

23          Based on the above, the Court **RECOMMENDS** that Defendants' motion to dismiss be

24  **GRANTED in part and DENIED in part**.  The Court RECOMMENDS that Defendants' motion to

25  dismiss the Eighth Amendment claims of deliberate indifference to serious medical needs as to

26  Defendants Khatri and Esperanza be GRANTED with leave to amend.  The Court RECOMMENDS that

27  Defendants' motion to dismiss the Eighth Amendment claim of deliberate indifference to serious

28  medical needs as to Defendants Houston and Valenzuela be DENIED and Defendants' motion to

1  dismiss the Eighth Amendment claim of conditions of confinement as to Defendants Houston and

2  Valenzuela be GRANTED with leave to amend.

3        This report and recommendation will be submitted to the United States District Judge assigned to

4  this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Any party may file written objections with

5  the court and serve a copy on all parties by **November 21, 2008**.  The document should be captioned

6  "Objections to Report and Recommendation."  Any reply to the objections shall be served and filed by

7  **December 5, 2008**.  The parties are advised that failure to file objections within the specified time may

8  waive the right to raise those objections on appeal of the Court's order.  Martinez v. Ylst, 951 F.2d 1153

9  (9th Cir. 1991).

10  IT IS SO ORDERED.

11  DATED:  October 17, 2008

12                                          _____
                                            Hon. Anthony J. Battaglia
13                                          U.S. Magistrate Judge
                                            United States District Court

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28